UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

NATHON ZINK,

              Plaintiff,              Case No. 2:17-cv-32

v.                                            Honorable Paul L. Maloney

C. CUMMINGS,

              Defendant.

_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Nathon Zink, a state prisoner currently incarcerated at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendant Inspector C. Cummings. In his complaint, Plaintiff alleges that on September 13, 2016, he sent a letter to someone named Allayna Murphy in Coloma, Michigan. Plaintiff states that the letter was seized by Defendant Cummings, who turned it over to Trooper Steve Koskela with the Michigan State Police. The letter was used as to criminally prosecute Plaintiff. Plaintiff states that he did not receive a Notice of Intent or a hearing regarding the seizure of his mail, which violated MDOC policy and his constitutional rights. Plaintiff states that a Notice of Intent was finally issued on January 6, 2017, three months after the letter was seized by Defendant Cummings. Plaintiff seeks damages and equitable relief.

**Discussion**

    I.    <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff's claims regarding the seizure and use of his outgoing mail to criminally prosecute him, do not support a First Amendment claim. A prisoner retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system [ ]." *Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir.1986) (*quoting Pell v. Procunier,* 417 U.S. 817, 822 (1974); *see Turner v. Safley,* 482 U.S. 78 (1987). It is well established that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our

penal system." *Price v. Johnston,* 334 U.S. 266, 285 (1948). The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives- including deterrence of crime, rehabilitation of prisoners, and institutional security. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987) (*citing Pell,* 417 U.S. at 822-823; *Procunier v. Martinez,* 416 U.S. 396, 412 (1974)).

Plaintiff asserts that the defendants violated his First Amendment rights by reading his outgoing letter and turning the letter over to the Michigan State Police. Inmates have a First Amendment right to communicate with the outside world by sending and receiving mail. *Thornburg v. Abbott,* 490 U.S. 401, 407 (1989); *Turner,* 482 U.S. at 85. That right, however, is not absolute. Rather, it is limited by concerns for institutional security and public safety. Prisons and jails may impinge upon an inmate's First Amendment right to send or receive mail so long as their policies are "reasonably related to legitimate penalogical interests." *Turner,* 482 U.S. at 89. With regard to outgoing mail, such concerns include, but are "not limited to, escape plans, plans relating to ongoing criminal activity, and threats of blackmail or extortion." *Thornburgh,* 490 U.S. at 412.

Prison officials do not violate the First Amendment by inspecting and reading an inmate's outgoing non-legal mail. *Frey v. Raisanen*, 2014 WL 545794, at *2 (E.D. Mich. Feb. 11, 2014), *citing Caldwell v. Beard,* 305 F. App'x 1, 4 (3d Cir.2008) (prison officials did not violate the First Amendment by reading inmate's outgoing mail to his family); *Altizer v. Deeds,* 191 F.3d 540 (4th Cir.1999) (opening and inspecting inmate's outgoing mail is reasonably related to legitimate penological interests and does not violate the First Amendment); *Smith v. Delo,* 995 F.2d 827, 830 (8th Cir.1993) (prison officials are justified in screening outgoing nonlegal mail for escape plans, contraband, threats, or evidence of illegal activity); *Stow v. Grimaldi,* 993 F.2d 1002, 1004–05 (1st

Cir.1993) (state prison practice requiring that non-privileged outgoing mail be submitted for inspection in unsealed envelopes did not violate prisoner's constitutional rights); *United States v. Whalen,* 940 F.2d 1027, 1035 (7th Cir.1991) ("it is well established that prisons have sound reasons for reading the outgoing mail of their inmates"); *see also Gaines v. Lane,* 790 F.2d 1299, 1304 (7th Cir.1986) (upholding prison regulations authorizing the inspection of incoming and outgoing nonlegal mail).

Nor do prison officials commit a constitutional violation by reading prisoners' outgoing nonlegal mail and forwarding matters of concern to police or prosecutors. *See Frey v. Raisanen*, 2014 WL 545794, at *3, *citing Busby v. Dretke,* 359 F.3d 708, 721 (5th Cir.2004) (finding that the First Amendment did not bar jail officials from reading an inmate's mail and turning letters over to prosecutors if the jailers found valuable evidence during routine monitoring); *Gassler v. Wood,* 14 F.3d 406, 408 n. 5 (8th Cir.1994) (citing cases and finding no First Amendment violation where prison officials read prisoners' outgoing nonlegal mail and sent copies to agent investigating their crimes); *Houston v. Hornick,* No. 2:08–cv–92, 2008 WL 2699384, *1–2 (W.D. Mich. June 30, 2008) (adopting report and recommendation dismissing complaint for failure to state a constitutional claim where prison official read prisoner's letter to psychiatrist and gave it to police, which resulted in prisoner's bond revocation and placement in segregation). Thus, to the extent that Plaintiff contends that his First Amendment rights were violated by Defendant's actions in reading his letter and forwarding it to the Michigan State Police, he fails to state a claim upon which relief may be granted.

Plaintiff claims that his due process rights were violated by Defendant Cummings' conduct. Plaintiff cites MDOC Policy Directive 05.03.118, and asserts that he was entitled to a

Notice of Intent and hearing prior to the seizure of his mail. Under MDOC Policy Directive 05.03.118, a prisoner is entitled to a prompt hearing on mail which is deemed to be a threat to the order and security of an institution or to the rehabilitation of prisoners. *Jones v. Michigan Dep't of Corr.*, 2011 WL 447017, at *2 (W.D. Mich. Feb. 1, 2011). However, Policy Directive 05.03.118 ¶ F states:

> Law enforcement officials shall be contacted immediately through the appropriate chain of command if mail addressed to or sent by a prisoner contains evidence of illegal activity. Upon request of a law enforcement official and approval of the facility head, notices required to be issued and hearings required to be conducted pursuant to this policy may be delayed for a reasonable length of time to allow for a criminal investigation.

According to Plaintiff's complaint, the letter was deemed to be a confession and was used as evidence against him. Therefore, because the mail contained "evidence of illegal activity," MDOC 05.03.118 did not entitle Plaintiff to a notice or hearing prior to a criminal investigation being conducted. Plaintiff fails to allege any facts indicating that Defendant Cummings violated MDOC policy, much less federal law. Therefore, Plaintiff's due process claims are properly dismissed.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no

good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  June 1, 2017                             /s/ Paul L. Maloney
                                                Paul L. Maloney
                                                United States District Judge